May it please the Court. I'd like to reserve two minutes for rebuttal. My name is Daniel Drake. I'm an attorney from Phoenix, Arizona, and I represent Juan Chavez-Pacheco. Could you speak up, or may I just move the mic closer to you? Is that better, Your Honor? Yes, that's better. Thank you. Thank you. Oh, by the way, I have hearing aids, so I may have some difficulty at times with the reception. All right. We'll speak up, too. Okay. Thank you. Thank you. Let's start with the crime of violence. And as the federal courts have analyzed that in both Leocal and Fernandez-Ruiz, it requires a purposeful act, some act that is intended to accomplish a particular outcome. And Leocal gives the example of the stumbling into someone as not involving the use of force, the use of force, and pushing someone as involving the use of force. So your client was convicted in 1989 or something like that? 1989. So was California law on the intent required under 245, do you think it was different in 1989 than it was after Williams was decided in 2001 or whatever it was? Yes. Okay. In 1989, it required an intent to commit a battery, and a battery under California law is not a violent crime. A crime of violence was in the meeting. Any kind of a touching. It doesn't have to be. Any kind of a touching. Any kind of touching. Okay. And so in a situation like that, if somebody drives their car around a barricade, mistakenly believing that the police are calling them on, and their car hits the police officer, that is a touching. So let me ask you this. So even if, even if what we end up concluding is that by 2001, the California Supreme Court had cleared this up enough to deal with cases after that, should we be looking, is it your position that we should be looking at what the law was in 1989 to figure out whether your client was convicted of a quote, unquote, crime of violence? Right. Okay. And, and even if it's. Are there cases that's, I'm not necessarily disagreeing with you. Are there cases that say that? That we look at what it was at the time, in other words? I mean, logically you'd think so, but. Yeah, we do so with statutes, but I, but I don't have a particular case to point to on that. Perhaps the prosecution does. But let me move on then to what's the difference between Grajeda, which is the case that we're talking about, and, and Cerrone. In Grajeda, the court played, played, gave great homage to the fact that the California courts were in confusion. And that one court had said this and another court had said that. And it pointed out towards the point where it was coming to the conclusion on this, that we don't have to decide this issue. We don't write on a blank slate, was the term they used. And the blank slate they were referring to was not California law as interpreted by the California courts. It was the federal court interpretation of California law in prior cases. And if you look at her own Salinas, a per curiam decision that, that copies somebody else, each of the cases that you've got in that line go back and talk about, this argument is foreclosed because it is a categorical crime of violence under our earlier cases. What the court did in Cerrone that was not done in, in Grajeda, was to attempt to cut the Gordian knot and decide or realize once and for all what California really said or what California really meant. Not just simply referring to what some other panel had said about the issue. And so they went through the analysis of that California statute and of the intent requirement and tried to come up with what it means. And they quoted, therefore, with great length to the California opinion. Because even if you pick out a sentence, one here and one there, of the court's position in Williams, you can make an argument that it's a negligent standard. You can make an argument that it's a reckless standard. What the court in, in Cerrone did was say, look, we put all of this together. We don't pick a part of this or we don't refer to a different case over there. We look to what the California Supreme Court said when it was trying to clarify the situation. And in essence, we're trying to clarify the situation and clear it up so that we don't have cases referring to something from this year and saying one thing and referring to a case from another year and saying a different thing. Alitoson I have, I have some difficulty taking the abstract words of Williams in the air and figuring out just how broadly they reach. But when I look at the facts of Williams, somebody shooting into the wheel well of a car, an occupied car with a shotgun, it becomes much easier for me to understand why they used the abstract formula to explain the result. That's a pretty violent thing to do when you stick two shells in your shotgun and you fire it into a car in the area where a pellet might go through the floor. It might penetrate the gas tank. And that's really violent. And it makes it easier to interpret Williams to mean things that are pretty violent. Right. But that's getting back into the facts. I don't know that it's fair to read the Williams holding as merely the abstract formulation without looking at its connection with the facts in order to determine how it reaches a result. Well, if that's fair, then let's look at the car Llewellyn way of reading a case. Okay. Then let's look at some of the later cases that talk about what Williams said in terms of the California courts. The dissent by Justice Kennard, I believe it was, in Williams says this is a negligence standard. You're talking about a negligence case. That's why I brought this up. I thought Judge Kennard made a good point, but you could understand why a majority went with Judge Brown when you look at the facts. Right. And then you get to the next time that they look at it, and I can't recall what it is. And Judge Kennard's point just goes to the abstraction. Correct. And look then at the court of appeals' opinion in, I believe it's Wright, and the facts in Smith. Smith was the situation where the individual drove around the barricade and struck the officer. And they found, if I recall correctly, that it was insufficient. And the case was remanded after Williams. But the court in Wright goes straight forward and says this is negligent assault. That's what we are talking about. And the problem is, when you start with this categorical analysis, you look to see whether the statute has applied to areas that are not under the Federal statute or not within it. And by taking it at that negligence standard, allowing it to take into account the fact that driving around the barricade, I struck an officer, that takes it outside the Federal statute. And in my mind, that's why Sorone undercuts, overrules, is not to be reconciled with Grajeda. Why don't you take a shot at why moral turpitude has anything to do with crime of violence? I mean, if I were to pull out a gun right now and shoot you, I'd be guilty of a crime of violence, but it wouldn't be a crime of moral turpitude. With all due respect, I think the issue of moral turpitude takes us down the wrong path. I think what we need to look at is what they were talking about, which is the element of intent required in Section 245A.1. And that's where they went. On this issue of whether this is a crime of moral turpitude or isn't it, they gave it to the BIA. Okay? So let me ask a quick question. So even if we conclude that Sorone, or that Sorone doesn't change anything about how the statute is interpreted now, okay? Is it still your position that it was different in 1989 before Williams? It didn't require enough, and you should win under that interpretation as well. Well, you get into the court in Williams said it was trying to clarify the position. Right. And words have meanings.  Okay. Thank you. You go ahead. Thank you. Good morning, Your Honors. May it please the Court. Jillian Besanson from the District of Arizona on behalf of the United States. As we've heard throughout the cases this morning, this Court has already decided the only issues in this appeal. In United States v. Grajeda, the Court unequivocally held that California Penal Code Section 245A.1 is categorically a crime of violence. So if we've already decided it, and it's so clear, how come we have four cases about this this morning? Your Honor, I wouldn't attempt to determine why that might be. It's so, so clear. We have four cases in a row on these same issues this morning. Yes, Your Honor, but in the past, this Court has repeatedly reaffirmed Grajeda, both in a series of published and unpublished cases. We have long and clear established law on this point. So let me try out on you the questions I was asking Mr. Drake. Because irrespective of what he said just now, if you look at his opening brief, he seems to be arguing that the law about what 245 meant was different in 1989 when his client committed the underlying crime than it is now. So if that's the case, let's say it's different when the person commits the crime than it is when he's removed, deported, whatever the lingo is. Okay. What do we look at? Do we look at what it was at the time, or do we look at what it is now? Your Honor, I'm not aware of a case that specifically addresses that, but I would point out that in Grajeda, the Court discussed the 2001 Williams decision and applied that to a 1996 conviction. I understand that, but they didn't deal with this issue. And Mr. Drake, at least in his brief, seems like he's raising the issue. I mean, Williams clearly changes something, right? Williams talks about these two earlier cases. I think it's Rocha and Colon, however you pronounce that. Colantwano, I believe. That basically say that under 245, it's enough that if you commit an act, the foreseeable consequence of which is harm. Williams says you have to commit an act knowing facts that would lead the person to believe that the reasonable consequence is harm. It sounds like a nuance, but it's more like sort of almost a purely objective standard as opposed to an objective standard of the person in the same position as the defendant. So it seems like to me that it changed something. I don't know whether the change is significant for the purpose we're talking about here or not. Your Honor, if there was a change, I think that change was slight. And we know that because the Williams Court specifically stated, in adopting this knowledge requirement, we do not disturb our prior holdings. And after that statement, it quoted Colantwano and Rocha and Hood. So they really were just as Mr. Drake said, just clarifying that changing is what you're saying. Yes, Your Honor. And I understand that you're concerned about the date of the conviction. Mr. Chavez Pacheco was convicted in 1989. The Grajeda appellant was convicted in 1996. And there's controlling law on this point. This Court has already held that a 1980 conviction for assault with a deadly weapon in California is a crime of violence. And that was in a published decision. This Court has also held that a 1981 conviction is a crime of violence and a 1988 conviction. So unless this statute ---- Did they deal with it? Did those cases deal with this issue, though? No, they did not. I mean, if you had like a really clear case. I mean, for example, if the California Supreme Court had said in 1980 that 245 only requires negligence, period. Then a person gets convicted under that interpretation. Then they come along 20 years later and say, we were wrong. It doesn't just require negligence. It requires something more. Then the person who committed the crime in the intervening period gets deported. It wouldn't seem right that you would say, well, even though when you did it, it wasn't a ---- We're going to deport you anyway. There's something that seemed wrong with that to me. That's why I'm focusing on this change issue. Yes, I would agree with that, Your Honor. But I would also point out that as early as 1951, the California Supreme Court had held that criminal negligence or recklessness is not enough to violate the statute. That's the Roca or Rocha case? That was actually People v. Carman in 1951. And then we have Hood in 1969, which repeats that conclusion. And then in Roca, we have the Supreme Court saying in 1971 that this is a general intent crime. So really, these issues we're talking about were established before 1989 when this appellant was convicted. Your Honors, I also think it's worth pointing out the similarities factually in this case between Grajeda and this case. Mr. Chavez Pacheco was convicted of illegal reentry, just like the appellant in the Grajeda case. And like the district court in that case, this district court concluded that this crime is a crime of violence. So besides being directly on point in terms of the legal issues, the cases are really very factually similar. I have a slightly different, maybe related question to this question that was raised about there was a different men's race standard back in 1989. Mr. Chavez was not convicted by jury.  That's true, Your Honor. And I'm wondering if at the time when he pled, he knew of the potential immigration consequences to this plea, or that it could be used to enhance his sentence. What is this, 1326? Yes. Used to enhance his sentence by 12 points in his offense level at the time. And I also noticed that it wasn't counted in the criminal history points because it's stale. But I'm just wondering whether, I don't know, in this context, whether there should have perhaps been a collateral attack. I don't know, the Supreme Court's held you could collaterally attack a removal order in this context. But I'm just wondering whether he was advised of the immigration consequences. From what I could tell of the records from the conviction that the government filed, it was a hit and run accident where someone was injured or died. I'm not sure. It appears from the documents of conviction, which of course we don't consider in terms of the categorical approach, that this was a car collision in which one person died and two people were injured. Mr. Chavez Pacheco faced some heightened charges. He ultimately pled guilty to vehicular manslaughter, a hit and run with injury, and this assault with a deadly weapon. So car accidents are generally negligent. Was there something more about this particular car accident that brought it into the realm of intentionality? We don't know, Your Honor. But I do know that California has a few reckless driving statutes, and this is not one of them. Those would be Vehicle Codes 23103 and perhaps 23104, which is reckless driving causing bodily injury. And it does not appear that Mr. Chavez Pacheco was charged with those violations. Yeah, and this is San Bernardino County back in 1989. And so all of these, you know, they charge everything when it was just a car accident. It just seems a little troubling to be using that as the basis. And I guess that's why he makes the argument that the intent element was different for, you know, back in that time period than it was definitively after Williams. Well, Your Honor, I would point out, and this case is not in our briefing. I'd be happy to file a 28-J letter on this. In 1980, in People v. Cotton, the California courts distinguished between reckless driving and assault with a deadly weapon and determined that they could not per se import the mens rea for assault with a deadly weapon from reckless driving. So I think that earlier than this appellant's conviction, there was a recognized difference. So what year was that case? 1980. Okay. Could you give us the site? You could just write it down on a slip of paper and give it to the clerk. Sure. He pleaded to the hit and run, didn't he? Yes, he did. Hit and run with injury. So I was a little surprised to see felony hit and run resulting in an ADW conviction. But, of course, I don't know what the deal was or why the deal was made, whether it was you plead to ADW, we'll give you a shorter sentence on leaving the scene. And we don't get to any of that, right? No, we don't, under the categorical approach. His argument is just whether the ADW is a crime of violence. Yes, Your Honor, and that's particularly important here because, based on the records we have, we simply don't know what the underlying facts were. So this could have been much more serious than your ordinary car accident. And, in fact, it appears to be. We don't know. We don't know. We don't know, and we don't go there at all with 245A, which means very, very old convictions can enhance a person sentenced under 1326 greatly. Yes, Your Honor, this appellant received a 12-level enhancement under the guidelines. Okay. Your Honors, United States v. Grajeda is directly controlling in all aspects of this case, and the United States respectfully requests that the Court affirm the sentence imposed by the district court. Thank you. All right. Thank you. We can have rebellious time for two minutes. Two points, Your Honor. You asked a question, I believe, about the application of the time of the deportation and the impact, and that, Judge Kleinfeld. In Salazar-Mojica, a case from the prosecution's supplemental briefing, it involved a 1980 conviction that the defendant argued had been reduced to a felony. Apparently, it was reduced to a felony following his deportation. In that particular case, the Court ---- Reduced to a felony? Do you mean reduced to a misdemeanor? I'm sorry. Thank you. Thank you. I misspoke. Reduced to a misdemeanor following his deportation. In that case, the Court said it would rely upon the status of the offense or the crime as of the time he was deported. Yes, but that was ---- you tend to give people breaks if the law changes. It doesn't tend to work the other way. Right. And then the second thing I wanted to talk about briefly was this issue about the ---- it's not negligent and it's not reckless that comes up in People v. Carman, is mentioned in Rocha, is mentioned in Williams. And at one point, Williams says, and this is where you go to pick out a particular line, Williams says the actor need not be subjectively aware of the risk that a battery might occur. The model penal code, as it puts these things together, says that for negligent conduct, no subjective fault is required, so that the individual need not realize the risk in order to be negligent. Well, that sounds exactly like what the Court said in Williams and all these other cases when it's saying negligence isn't enough. No, it's like a lot of language in the restatement of torts. It can mean a whole lot or it can mean fairly little, and Williams is in the context firing a shotgun into the wheel well of a car with a guy and a bunch of kids standing around. It's really dangerous. Yes. And I don't think you can read Williams without paying attention to that, as well as to the formulations that sound like the restatement of torts. Right, but I think the Court has to pay attention, too, to the way the California courts have applied Williams since that time. And there were a number of cases, I believe, cited in the supplemental brief towards the tail end. I won't go into it now, but my time's up, and I wanted to thank you for your attention. Thank you very much, Counsel. The United States v. Chavez is submitted.
judges: Kennelly, Kleinfeld, Wardlaw